UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUNGELA EILAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 1532 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| B.E. ATLAS COMPANY, INC., NORB PUTLAK, and MARK FEEDER, | ) |
| | ) |
| Defendants. | ) |

# OPINION AND ORDER

Plaintiff Jungela Eiland, an African American female, brings this suit against Defendants B.E. Atlas Company, Inc. ("Atlas"), Norb Putlak, and Mark Feder.[1] Eiland alleges race discrimination and constructive discharge in violation of 42 U.S.C § 1981 and race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq*. Eiland also brings a supplemental state law battery claim against Feder and seeks to hold Atlas responsible based on *respondeat superior* for Feder's and Putlak's tortious acts. Defendants have filed several motions to dismiss or strike allegations [9, 10, 11, 27], which are granted in part and denied in part. Because there are no allegations to suggest that Feder's alleged actions were racially motivated, Eiland cannot pursue any race-based discrimination or constructive discharge claims directly against Feder or against Atlas based on his actions. But because Feder's actions can be read as having been raised in Eiland's EEOC charge as part of a hostile work environment claim, Eiland may pursue a sex-based hostile work environment claim that includes Feder's actions and may also maintain her state law battery claim against Feder as part

---

[1] Eiland has improperly named Defendant Feder as "Mark Feeder." The Court will refer to him as Feder throughout this Opinion and Order.

of this lawsuit. Feder's actions are as a matter of law outside the scope of his employment, however, and thus Atlas cannot be held vicariously liable for them.

## BACKGROUND[2]

Eiland worked at Atlas as an Accounts Receivable Manager with the title "Secretary for MLC." Second Am. Compl. ¶ 8. In April 2012, Feder, who also worked at Atlas, grabbed one of Eiland's breasts, commenting that the shirt she was wearing was too small for her. Between May 2011 and December 2013, Putlak, another Atlas employee, sent Eiland numerous offensive emails, including ones with racial and sexual overtones. Eiland complained about this conduct but eventually left Atlas in 2013.

Eiland filed a charge with the EEOC on September 12, 2013.[3] She indicated that she was complaining of discrimination that took place between November 1, 2012 and May 30, 2013, during which time she was "subjected to racial and sex based harassment." Ex. A to Doc. 27. The EEOC issued a Notice of Right to Sue letter to Eiland on April 7, 2014.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

---

[2] The facts in the background section are taken from Eiland's Second Amended Complaint and are presumed true for the purpose of resolving defendant's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to the plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

[3] Eiland did not include her EEOC charge as an exhibit to the Second Amended Complaint but Defendants submitted the charge as an exhibit to one of their motions to strike. Because the Court must consider the allegations in Eiland's EEOC charge to determine the proper scope of her Title VII claims and the charge is referenced in the Second Amended Complaint and is central to Eiland's claims, the EEOC charge is properly before the Court at this time. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases).

1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Claims Based on the Feder Incident

Defendants argue that Eiland's Title VII race and sex discrimination and harassment claims based on allegations that Feder grabbed her breasts (the "Feder Incident") are not viable and thus those allegations should be stricken from the Second Amended Complaint. Specifically, Defendants argue that Eiland cannot base her Title VII claims on the Feder Incident because the incident occurred over 300 days prior to Eiland filing her charge of discrimination with the EEOC and because Eiland did not include the incident in her charge.

Eiland may not bring a Title VII claim without first having filed a charge before the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 680 (7th Cir. 2005). In turn, she "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). An allegation in

3

an EEOC charge is reasonably related to a federal claim if it involves "the same conduct and implicate[s] the same individuals." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).

With respect to discrete discriminatory events, only those events that occurred within 300 days of the filing of the EEOC charge are actionable. 42 U.S.C. § 2000e-5(e); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). The Feder Incident occurred in April 2012 and Eiland's EEOC charge was filed on September 12, 2013, more than 300 days after the Feder Incident. Thus, to the extent Eiland is asserting any discrete claims of harassment or discrimination based on the Feder Incident, those are time-barred.[4]

Eiland, however, argues that the Feder Incident forms part of her hostile work environment claim and is thus timely. *See Morgan*, 536 U.S. at 115–17 (hostile environment claims occur "over a series of days or perhaps years" so that as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability"); *Turner v. Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." (quoting *Morgan*, 536 U.S. at 105)). Defendants argue that the Feder Incident is not sufficiently similar to the other timely actions of which Eiland complains, as it was a sexual advance and not an offensive comment, was a single act and not a repeated course of conduct, and was perpetrated by a different person. Defendants are reading *Morgan* too strictly and asking the Court to determine too much at this stage, however. The

---

[4] In one of her responses, Eiland admitted that she could not bring a Title VII claim based on the Feder Incident. *See* Doc. 16 at 8 ("Plaintiff has pled Battery since § 2000e is out of reach. The Battery having occurred outside of 300 days.").

4

standard established in *Morgan* for hostile work environment claims only asks "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Morgan*, 536 U.S. at 120. The Putlak emails fall within the statutory time period. Taking all reasonable inferences in Eiland's favor at this stage, she has sufficiently alleged a sex-based hostile work environment claim encompassing both the Feder Incident and the Putlak emails. *See Downey v. Briscoe*, No. 09 C 5870, 2013 WL 6230611, at *3 (N.D. Ill. Nov. 29, 2013) (*Morgan* does not require that the same managers be responsible for the pre- and post-period conduct).

Further, although Defendants argue that Eiland's EEOC charge does not encompass the Feder Incident because that incident was not specifically mentioned and falls outside the time period Eiland listed for when the discrimination of which she complained took place, the Court finds that the EEOC charge can reasonably be read to encompass the incident. The EEOC charge is vague and does not mention specific incidents of discrimination, instead only stating that Eiland was "subjected to racial and sex based harassment." This could be read to include not only the Putlak emails but also the Feder Incident. Similarly, although the dates of discrimination are listed as November 1, 2012 to May 30, 2013, the text of the charge specifies that the discrimination took place "during [Eiland's] employment," which she indicated began in April 2012, when the Feder Incident took place, and ended on May 30, 2013. Thus, read liberally, the Feder Incident was included in the time period of the charge and Eiland may pursue a hostile work environment claim that encompasses the Feder Incident.

II.     **Race Discrimination Claims Based on Feder Incident**

Defendants also ask the Court to limit Eiland's race discrimination and harassment claims, striking her allegations that suggest that such claims are based on the Feder Incident or

5

emails that Putlak sent that were purely sexual in nature. As Defendants argue, Eiland has provided no allegations and no reasonable inference can be drawn that the Feder Incident was somehow racially motivated. Similarly, it would be difficult to argue that some of the emails that Eiland has submitted have racial overtones. Eiland recognizes that "sexual misconduct not based upon race does not make for a § 1981 claim." Doc. 17 at 4. For clarification purposes, Eiland's race discrimination, harassment, and hostile work environment claims are limited to misconduct based on race, which at this stage does not include the Feder Incident or emails with purely sexual overtones. And because there are no allegations in the Second Amended Complaint to suggest that Feder acted toward Eiland in a racially discriminatory manner, Eiland's § 1981 claims against Feder are dismissed. *See Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (affirming dismissal of § 1981 claim where only allegations were that plaintiff was "Brown" and that charges had not been investigated, stating that "[t]o sufficiently state a cause of action the plaintiff must allege some facts that demonstrate that his race was the reason for the defendant's inaction"). The Court, however, will not strike any allegations from the Second Amended Complaint, as the allegations regarding the Feder Incident and emails of a sexual nature are relevant to other claims that Eiland is pursuing.

## III. Battery Claim

Defendants argue that the battery claim should be dismissed because it is not so related to any of Eiland's federal claims so as to invoke the Court's supplemental jurisdiction. The Court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Supplemental jurisdiction includes "claims that involve the joinder or intervention of additional parties." *Id.* Here, the Court has already determined that the Feder Incident forms

part of Eiland's sex-based hostile work environment claim. Thus, the battery claim against Feder arising from the same incident is so related that it falls within this Court's supplemental jurisdiction, notwithstanding the fact that it is the only claim that will remain pending against Feder. Although the Court may decline to exercise jurisdiction over the battery claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction," 28 U.S.C. § 1367(b), none of these factors apply here. Thus, Eiland may proceed with her battery claim in this forum.

**IV.     Respondeat Superior Claims**

Atlas seeks to dismiss Eiland's *respondeat superior* claims, arguing that these claims are not viable. Eiland has asserted a separate claim entitled "*respondeat superior*," seeking to hold Atlas responsible for Putlak and Feder's actions as within the scope of their employment or agency. As an initial matter, any independent claim of *respondeat superior* against Atlas for Putlak's conduct is unnecessary, as Eiland has not alleged an intentional tort against Putlak, Eiland has included Atlas in her § 1981 claims, and Atlas answered those claims.[5] *See Odeluga v. PCC Cmty. Wellness Ctr.*, No. 12-CV-07388, 2013 WL 4552866, at *5 (N.D. Ill. Aug. 27, 2013) ("A § 1981 plaintiff may pursue a defendant for the civil rights liabilities of its agents under a *respondeat superior*, or vicarious liability, theory."). Thus, the only issue for the Court to consider is whether Atlas can be held vicariously liable on the battery claim arising out of the Feder Incident.

---

[5] Atlas filed its answer to these claims in response to Eiland's initial Complaint. Since then, Eiland has amended her complaint twice, but the fact remains that Atlas is not seeking dismissal of the § 1981 claims against it at this time.

Employers can be liable for the torts of their employees only if those torts are committed within the scope of employment. *Wright v. City of Danville*, 675 N.E.2d 110, 118, 174 Ill. 2d 391, 221 Ill. Dec. 203 (1996). But, under Illinois law, acts of sexual assault and harassment do not fall within the scope of employment. *Doe v. Lawrence Hall Youth Servs.*, 966 N.E.2d 52, 62, 2012 IL App (1st) 103758, 358 Ill. Dec. 867 (2012) ("[S]exual assault *by its very nature* precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of *respondeat superior*."); *Deloney v. Bd. of Educ. of Thornton Twp.*, 666 N.E.2d 792, 799 n.5, 281 Ill. App. 3d 775, 217 Ill. Dec. 123 (1996) ("[I]n Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment[.]"); *see also Johnson v. Cook County*, 526 F. App'x 692, 697 (7th Cir. 2013) (affirming dismissal of state law claims based on *respondeat superior*, declining to be the "first court interpreting Illinois law to extend the doctrine of respondeat superior to a sexual assault claim"). Eiland's battery claim arises from allegations of sexual harassment and there can be no suggestion that Feder's job would have somehow sanctioned his actions. *Cf. Doe v. Roe*, No. 12 C 9213, 2013 WL 2421771, at *4 (N.D. Ill. June 3, 2013) (collecting cases where motions to dismiss or for summary judgment on scope of employment were denied where employee was a police officer engaged in policing duties). Because Feder's alleged actions can never be considered within the scope of his employment, Eiland's *respondeat superior* claim against Atlas fails as a matter of law. *See Krause v. Turnberry Country Club*, 571 F. Supp. 2d 851, 865 (N.D. Ill. 2008) ("[T]o the extent Krause relies on allegations of sexual misconduct to support her assault and battery, IIED, and false imprisonment claims, the claims do not state a plausible entitlement to relief [under *respondeat superior*].")[6]; *Luttrell v. O'Connor Chevrolet, Inc.*, No. 01 C 979, 2001 WL

---

[6] Certain *respondeat superior* state law claims survived the motion to dismiss in *Krause*, but they were not based on allegations of sexual misconduct. *See Krause*, 571 F. Supp. 2d at 865.

1105125, at *4 (N.D. Ill. Sept. 19, 2001) ("[S]exual misconduct of employees is outside the scope of employment as a matter of law, thereby relieving the employer of any liability."); *Doe v. City of E. St. Louis*, No. 13-CV-749-JPG-DGW, 2013 WL 5497193, at *3 (S.D. Ill. Oct. 3, 2013) (granting motion to dismiss claim against city on *respondeat superior* theory where the battery allegations were founded on sexual assault).

## CONCLUSION

For the foregoing reasons, Atlas and Putlak's motion to strike [9] is denied, Atlas' motion to dismiss [10] is granted, Feder's motion to dismiss [11] is granted in part and denied in part, and Atlas' motion to strike [27] is granted in part and denied in part. Eiland's claims against Feder in Counts I and II are dismissed. Eiland's *respondeat superior* claim against Atlas in Count III is dismissed. Count IV is dismissed. Eiland's claims based on the Feder Incident are dismissed from Counts VII and VIII. Defendants are ordered to answer the remaining allegations of the Second Amended Complaint by August 15, 2014.

Dated: July 30, 2014

_____
SARA L. ELLIS
United States District Judge

9